Good morning, Your Honors. My name is Alan Rubin, and I represent the appellant Oscar Moises Hernandez. There are many cases that come before the Court challenging wiretap and wiretap affidavits. I think that this is, however, a situation that really is quite unusual in my experience over many years. I've virtually never seen a case where there's been so much important information omitted from the wiretap affidavit, which even the government admits was omitted from the wiretap affidavit, with absolutely no explanation or believable explanation as to why it was omitted. Does that omission, though, really create an impression of necessity, when if it were included, it would not? I mean, it almost seems to me that if you include the omitted information, it compels or shows more necessity than it does without it. I think just the opposite, Your Honor, with due respect. I think, one, because what was omitted was all the successful investigation in this case using conventional means. The law is clear, and this Court reaffirmed in Gonzales that the wiretap is to be used as a last resort when other methods cannot be used. In this case, what was omitted? In May 4th, they had successful drug buys using an informant, using an undercover officer, not undercover, but an officer monitoring the phone calls, who could hear and who could testify even if the informant didn't want to testify. Again, if they can use an informant and they can arrange a drug sale, they don't need a wiretap. It's a last resort, not a first resort. So how stale was the omitted information? What's the timing on this? Well, in comparison to when the wiretap affidavit was – it was a little bit old. It was. But who is that? It was pretty old. It was. But whose fault is that? The government can't sit on its information and then say later it's stale and then ask for a wiretap affidavit. It's sort of bootstrapping their own case. And it wasn't all the way back to May, because then what – let me digress for a second. They offer no explanation as to why that's left out. None. There's no rational explanation. Here's kind of where I come into the issue, is a lot of these cases, it's where there's a false statement, and so then you can – it's easier to evaluate in some respects than an omission like you have here. So you're in this hypothetical, for example, trying to figure out whether there's a Franks hearing that you ought to have had. And so it would help me if you could explain how, in your view, having this information in terms of evaluating necessity might change the calculus, not just with respect to Mr. Hernandez, but with respect to this the whole drug organization beyond a single individual. I will try to do that, Your Honor. First of all, I think the Court has to recall or remember that 16 days, I believe, after they asked for the wiretap, they executed a search warrant. Sixteen days, they put all that information in. Okay? Why was it left out only 16 days earlier? That tells you that this is an intent – to me, it tells me this is intentional. This is not an omission or inadvertent or I didn't know. But let's – we already passed that threshold. They didn't put it in, and so we assume it's a willful omission. Well – But the fact that they're bad, bad actors doesn't change the necessity, the second part of it, does it? Well, there's more necessity. There was October where there actually was an actual drug sale. And I think if you look at their affidavit, how they completely mischaracterized what happened in October. They have two sentences. They don't tell you about the information that the person they captured was Hernandez's runner, allegedly, that he was willing to be a C.I., that they had actually – that a police officer had listened in on the conversation. The judge below made a mistake when she said that no undercover – that the C.I.s couldn't be used. In fact, who made – who arranged that October sale? It was the same C.I. that they used in May. Then they had a second C.I. They never even intended to or tried to use that C.I. They said they arrested him, and they said he couldn't penetrate. They didn't even make an effort to say, let me introduce you. The reason this is important is you have to – you see an effort here to game the system. I mean, there's a tension going on between search warrants, you have to put all the stuff in to get your search warrant, whereas in a wiretap affidavit, the more you put in about how successful you are, the less likely you are to get the wiretap affidavit, because it goes against the necessity requirement, because if you can do it all without a wiretap, why do it? Why grant it? So when they need a search warrant, all the information goes into the State search warrant affidavits. When they want a wiretap, they leave stuff out. Now, a Franks hearing, at a minimum, was necessary to get to the bottom of this. Why was this left out? Why did you mischaracterize all of these things that happened in October, that it was just some third party where you didn't say it was the runner of the organization, that you didn't say you got 32 grams of methamphetamine, which I might point out, they could have arrested him right then in October, because they had a police officer listening to him on the phone. They didn't need him in possession of the drugs. Well, counsel, you say they could have arrested Hernandez, but the government did have a motive to go broader and to try to penetrate into the whole network and the conspiracy. So you have to concede that we give a little more latitude in that situation. I absolutely agree with the court if that was, again, a true statement. Because their conduct disproves what they said in the affidavit. They said they needed a broader investigation to get suppliers, higher-ups. And then what happened? What really happened? They brought the wiretap down almost immediately. They never got any more suppliers. They never got any more higher-ups. They never found any stash houses. To me, this is the boilerplate that you see in every affidavit of why they need wiretaps, because it works. If you put those boilerplate allegations in a wiretap affidavit, it's going to be granted. But did they really want it for that purpose? Their conduct shows just the opposite. So now you go, let's say you go to the Franks hearing, and they'd absolutely done something that is subject to reproach here in terms of leaving it out, some mischaracterization. And the judge says, yep, you're bad people in terms of putting together the wiretap. But then you still have this issue of would that information, if you stick that in the wiretap application, you don't have to say you would win necessarily the necessity aspect of it, but how would it really change the judge's view? The judge's view, it's hard to know because you're speculating always. And we don't know what's going to come out in that Franks hearing. I mean, it's a position of saying, trying to uncover the truth or dig out the truth as to what really happened, I think we should be entitled to do that. You're suggesting the smell is overwhelming, that for purposes of process, you ought to at least get the Franks hearing, and you might end up the same, but you might not. That's true. I might wind up the same, but there may be more here. I mean, to think how we had to dig this out, there was a Hobbs warrant used here. The Hobbs warrant hides all the information from the defense. When we got the first warrant, when I got the first search warrant affidavit, I got nothing but blacked out information. I didn't find out about all this prior investigation until later on after I filed my suppression motion, and the prosecutor then gave me, when I complained about this, gave me the unredacted version. All of a sudden I went, holy cow, look at all this prior investigation they didn't tell the judge. I mean, what you see here is a pattern, month after month, effort after effort, to keep information away from the court, away from the defense, using Hobbs warrants, sneak and peek warrants, which are not allowed in federal court, consensuously. The Franks hearing at least will give us an opportunity to try to get to the bottom of it. If there's nothing there, then we'll lose our suppression motion. Do you want to save the remaining portion of your time? Thank you. Good morning, Your Honors. Elizabeth Rhodes on behalf of the United States. This is a case in which in April 2005, Judge Cooper signed off on a wiretap. Then in March 2006, Judge Collins denied a motion to suppress. Defendant makes two arguments. First, that Judge Cooper should have never signed off on that wiretap, because in his view, there is so much boilerplate information. That is essentially belied by the record and the affidavit of Helen Brusso. You don't deny that there's a bunch of boilerplate in this. I don't deny that there are facts, which as Judge Collins said, are similar to the facts in the application for Target Telephone 6, which is also part of the record. It is also true that those facts are certainly tethered factually to this investigation. As Judge Collins put it, it's not really surprising that some of the facts are the same, as it was a related investigation into a related drug ring. I think it would have been error, a further mistake for the government not to have put in some of those same facts. Having said that, there was clearly information that was not boilerplate and that was not put in the application for Target Telephone 6. Specifically, those facts are found in the government's brief on page 18 and 19. But just to go over them a little bit for your honors, perhaps clarification, they are the facts regarding the CIA in October, although the date was not put in, the Palatine search warrant, which led to no additional facts or ability to investigate, the surveillance on three locations tied directly to this defendant and therefore, hopefully, this organization. That is surveillance at the Palatine residence, which was not successful for a variety of reasons. One, the location itself had narrow hallways and a parking garage that was difficult, at least if not impossible, to get radio contact or cell phone coverage. Two, the fact that on 15 different locations, Mr. Hernandez had not been seen there. There was also surveillance at the Anaheim location, Anaheim Street, I believe it was, and that's found in the excerpts of record at 35 and 74. That location was the subscriber of the telephone and the registration for the vehicle that the government and the agents had determined Mr. Hernandez drove, so there was some investigation into that. However, that location was determined to be a mail drop, so additional surveillance on that location would not have been successful. There was also surveillance at Euclid Street, which was supposedly the address on a business card for Romeo Auto Sales that was found at the execution of the search warrant at Palatine. Unfortunately, there were some problems with that location. Number one, there was, I believe it's suite 19C. I could be wrong on that, but there was no 19C or there was no suite. The difficulty, there's a long recitation here, but the stuff that was left out actually was pretty productive. Do you see what I'm saying? I mean, you're going off on all this, but I'm thinking, well, okay, and there is that, but you had one failed setup, and then you had one actual buy, correct, that was left out? Yes, and I think that's a different point than the boilerplate, which I was trying to address, but to switch gears in terms of the omissions, which I think Your Honor is now discussing. Right. I mean, there's some boilerplate, but I guess the real question is, putting this together, is there enough of what went on here that smells to a degree that you just need to have a Franks hearing? Why not have a Franks hearing, and then we don't have to duke it out as to how bad or how disingenuous or not disingenuous the government's people might have been in terms of putting this stuff in the affidavit? Well, let me see if I can answer to the best of my ability. I will not say that this should be the model of an affidavit that the government uses in the future. Having said that, the government did produce information, which it then admitted that it omitted. But that information is one that in May of 2004, so 11 months before the wiretap was signed, the CI bought an eighth of an ounce from defendant's runner. And thereafter, the defendant became suspicious of CI1. He was not able to reconnect until October. That October information is actually in the affidavit of Helen Brussaux at, I believe, Excerpt of Record 70. The second omission was that the undercover was able to negotiate for a purchase. But that purchase never took place. And in fact, when the UC tried to call back, defendant didn't answer the telephone calls. Judge Collins received that information and based on a two-part Franks test determined, yes, it was omitted and it either was reckless or it either it was omitted and it should have been included. There's no argument and the government isn't making one as to the first prong. It's the second prong as to how would that wiretap. As Judge Collins found and as I believe the first question was, that information, that is, that the government tried to use an informant and tried to use an undercover officer, and both, although defendant argues that those were successful because there was an eighth of an ounce purchased, it certainly doesn't go to the larger goals of uncovering, you know, additional suppliers, additional couriers, additional people associated with Hernandez and stash locations. How long, over what period had this investigation been going on? Well, it's a little unclear from the record, but I was able to also speak to the case agent and I did leave a message for my former colleagues, so I assume I'll be billed soon. But the Huntington Beach Police Department had a pre-existing investigation and that's what was taking place in 2004. The Drug Enforcement Administration had an investigation and you'll note that we are on target telephone nine, which is at issue here. So it had an investigation going back, but that didn't really include Hernandez or his people. There was a... I guess my question is going to this issue of it doesn't seem that this information is all that stale, given the ongoing nature of the investigation. Well, I guess there were two points. One, if 11 months ago the defendant had decided that the CI and the UC were not trustworthy and that he wasn't going to deal with them, really whether that was 11 months or 11 days in some ways doesn't matter, because if the defendant wasn't going to deal with them, he wasn't going to deal with them. And putting that in the indictment, in the affidavit, would have actually helped necessity. But so there is a stale issue and that is certainly a finding of fact that is reviewed for clear error and that's a finding of fact that Judge Collins made. But there were two somewhat parallel investigations going on. So I wasn't long-term, but the two came together, I believe, in early 2005 through sort of a clearing house and a law enforcement conflicts check or an attempt to find out. So in that regard, moreover, the information that was used for probable cause, which is not challenged here, was certainly much more recent in February of 2005 rather than back to May of 2004. So in that regard, it wasn't as long-term, although certainly there had been enough done to show that the traditional methods of investigation were not going to be fruitful in uncovering the goals that the government had set forth. Unless the Court has any further questions. Thank you. Quickly, Your Honor, first of all, I want to emphasize that in October of 2004, there was again a successful use of the informant. It's not just May. And they were monitoring that and they recovered enough to send Mr. Hernandez away to jail for many, many years. With regard to the Franks hearing, it seems to me that once you keep having omissions and omissions and hidden evidence, somebody has to get to the bottom of it. So maybe I'm a little old school, but how do we know there's not more? I've done what I could to show from the record what we have and what the omissions were. But until you get this, the Supreme Court recognized in Crawford how important cross-examination is to getting to the truth. How do I know and how does Mr. Hernandez know there weren't more efforts that are just not there? We need that hearing to do that, to earn that, and so that Judge Collins' decision whether on materiality may have some basis. If we lose, we lose, but at least give us the opportunity. Thank you. Thank you. Thank both counsel this morning and the case of United States v. Hernandez is submitted.
judges: B. Fletcher, McKeown, Whyte